DECISION
{¶ 1} Relator, Angell Manufacturing Company, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order awarding temporary total disability compensation beginning January 7, 2002, to Dorothy J. Long, and to enter an order denying said compensation on grounds that claimant allegedly abandoned her employment when she participated in a union strike during which relator hired permanent replacement workers that prevented claimant from returning to work when the strike ended.
 {¶ 1} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In the decision, the magistrate addressed two issues: (1) whether the staff hearing officer's order of November 19, 2001, denying claimant's first request for temporary total disability compensation bars the commission under the doctrine of res judicata from granting claimant's subsequent request for temporary total disability compensation, and (2) whether the commission misapplied the law set forth in State ex rel. McCoy v. Dedicated Transport, Inc., 97 Ohio St.3d 25,2002-Ohio-5305 and related cases, when it awarded temporary total disability compensation beginning January 7, 2002. In resolving those issues, the magistrate determined: (1) res judicata did not bar the commission's order granting claimant's request for temporary total disability compensation beginning January 7, 2002, and (2) the commission did not misapply the law set forth in McCoy and related cases. Accordingly, the magistrate determined the requested writ should be denied.
 {¶ 2} Relator has filed objections to the magistrate's conclusions of law, rearguing those matters adequately addressed in the magistrate's decision. As the magistrate stated, "[d]uring the claimed period of disability, claimant was on strike. Because the strike ended after the claimed period of disability, any evidence regarding claimant's job status at the strike's end would have been irrelevant. In short, the [staff hearing officer's] decision of November 19, 2001 must be viewed as a denial of [temporary total disability] compensation based upon the more limited factual basis that claimant was on strike during the claimed period of disability." (Magistrate's Decision, ¶ 58.) By contrast, at the June 6, 2002 hearing, the claimed period of disability fell after the strike had concluded.
 {¶ 3} Under the second issue, the magistrate rejected relator's contention that claimant's engaging in a strike is tantamount to voluntarily abandoning her employment. As the magistrate observed "by [its] argument, relator is suggesting that engaging in a lawful strike parallels incarceration for the commission of a crime or a firing for violation of employer's written work rule. In the magistrate's view, no such parallel exists." (Magistrate's Decision, ¶ 77.) Given that R.C. 4123.61 provides that participation in a strike is to be considered a period of unemployment beyond the control of the injured worker for purposes of calculating average weekly wage, no parallel exits "between a lawful strike and incarceration for commission of a crime or be fired for violating a company's written work rule." (Magistrate's Decision, ¶ 78.) For those reasons as well as the others set forth in the magistrate's decision, we overrule relator's objections.
 {¶ 4} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ denied.
PETREE, P.J., and SADLER, J., concur.
 MAGISTRATE'S DECISION IN MANDAMUS {¶ 5} In this original action, relator, Angell Manufacturing Company, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding temporary total disability ("TTD") compensation beginning January 7, 2002 to respondent Dorothy J. Long ("claimant"), and to enter an order denying said compensation on grounds that claimant allegedly abandoned her employment when she participated in a union strike and relator's hiring of permanent replacement workers prevented her return to work when the strike ended.
 Findings of Fact {¶ 6} 1. On May 16, 2001, while lifting a heavy box at work, claimant injured her right shoulder. She was employed at the time as an inspector at Angell Manufacturing Company.
 {¶ 7} 2. On June 13, 2001, claimant presented to a medical center where the examining doctor restricted claimant to alternative duty involving no use of her right arm.
 {¶ 8} 3. Claimant continued to work at restricted duty at Angell Manufacturing Company through June 16, 2001.
 {¶ 9} 4. On June 17, 2001, claimant went on strike with her union.
 {¶ 10} 5. On September 24, 2001, the union ended its strike and offered to have the strikers return to work. However, because relator had hired permanent replacement workers during the strike, claimant was not permitted to return to work. Instead, she was subject to recall when work became available by being placed on a "Laidlaw list." Claimant was never recalled to work from the Laidlaw list.
 {¶ 11} 6. In the meantime, claimant filed a workers' compensation claim which relator apparently contested.
 {¶ 12} 7. On July 9, 2001, claimant's attending physician, Ronald J. Moser, M.D., certified TTD from June 29, 2001 to an estimated return-to-work date of August 27, 2001.
 {¶ 13} 8. On July 31, 2001, the Ohio Bureau of Workers' Compensation ("bureau") issued an order regarding the claim and relator subsequently filed an administrative appeal from the July 31, 2001 order.
 {¶ 14} 9. Following an October 10, 2001 hearing, a district hearing officer ("DHO") issued an order that modified the bureau's order. The DHO's order allowed the claim for "right shoulder sprain Grade I; bicipital tendonitis," and awarded TTD compensation for the period June 29, 2001 to August 27, 2001, based upon Dr. Moser's certification.
 {¶ 15} 10. Relator filed an administrative appeal from the DHO's order of October 22, 2001.
 {¶ 16} 11. A staff hearing officer ("SHO") heard relator's administrative appeal on November 19, 2001. Claimant was accompanied by her spouse at the hearing but was not represented by counsel. Relator appeared at the hearing through counsel. Relator's human resources manager, Beth Ney, testified on behalf of relator. However, the hearing was not recorded.
 {¶ 17} 12. Following the November 19, 2001 hearing, the SHO issued an order stating:
 {¶ 18} "It is the finding of the Staff Hearing Officer that the claimant worked light duty up to 6/17/01, when the company went on strike. The claimant went on strike and did not return prior to the effective date the strike ended.
 {¶ 19} "The Staff Hearing Officer finds that the claimant went off work for reasons unrelated to the industrial injury. Therefore, no temporary total disability compensation is ordered at this time.
 {¶ 20} "This order is based on the medical report of Dr. Moser, the testimony of Ms. Ney, the testimony of Ms. Long, and McGraw v I.C.,56 Ohio St.3d 137."
 {¶ 21} 13. The SHO's order was mailed November 21, 2001. A discretionary appeal may be taken to the commission if a party files the appeal within 14 days of receipt of the order.
 {¶ 22} 14. The record before this court contains a notice of appeal filed by claimant December 4, 2001. The notice of appeal form was apparently completed by claimant acting pro se. On the form, claimant indicates that she is appealing an order she received November 21, 2001. Somewhat confusingly, she further indicates that the order being appealed was issued by the DHO on October 22, 2001. The notice of appeal form instructs the appellant to attach a copy of the order being appealed. In the margin of the notice of appeal is written in bold handwriting "SHO Order Attached." However, the notice of appeal before this court does not have an SHO order attached.
 {¶ 23} 15. To date, the commission has not yet ruled upon the notice of appeal filed by claimant on December 4, 2001. (See supplemental stipulation of evidence and/or facts filed in this action on July 22, 2003.)
 {¶ 24} 16. On January 7, 2002, claimant underwent right shoulder surgery performed by Dr. Moser. Based on the surgery, Dr. Moser certified a period of TTD beginning January 7, 2002 to an estimated return-to-work date of April 7, 2002.
 {¶ 25} 17. On January 24, 2002, the bureau mailed an order granting TTD compensation beginning January 7, 2002. Relator administratively appealed the bureau's order.
 {¶ 26} 18. The administrative appeal was heard by a DHO on April 19, 2002. Ms. Beth Ney attended the hearing on behalf of relator. The record contains an affidavit from Ms. Ney executed March 13, 2002. Presumably, the affidavit was submitted to the DHO at the April 19, 2002 hearing. The Ney affidavit states:
 {¶ 27} "* * * I am Human Resources Manager for Angell Manufacturing. I make this affidavit from personal knowledge.
 {¶ 28} "* * * Dorothy Long went to a medical facility on June 13, 2001, complaining of shoulder pain. She was released to work with restrictions. We complied with her restrictions and she continued to work through June 16, 2001.
 {¶ 29} "* * * Long was a committee member for the Union that represented the Company's employees at that time, a local of the United Auto Workers. On June 17, 2001, Long went on strike with the UAW, and has not returned to work.
 {¶ 30} "* * * On September 24, 2001, the UAW ended its strike and offered to have the remaining strikers return. At that time I placed the remaining striking workers, including Long, on a `Laidlaw list' subject to recall, because we had hired permanent replacements during the strike and were at full working capacity.
 {¶ 31} "* * * We have not had any openings since the strike ended. For that reason, we have not yet recalled Long from the Laidlaw list, and would not have recalled her even if she had no industrial injury." (Emphasis sic.)
 {¶ 32} 19. The claimant administratively appealed the DHO's order of April 19, 2002. The administrative appeal was heard by an SHO on June 6, 2002. Ms. Ney also attended the June 6, 2002 hearing on behalf of relator. Following the hearing, the SHO issued an order that vacates the DHO's order of April 19, 2002. The SHO's order of June 6, 2002 states:
 {¶ 33} "The parties agreed that the prior requested period of temporary total disability compensation (6-29-01 to 8-27-01) is res judicata per the prior final SHO order in file dated 11-19-01. It was error for the District Hearing Officer to readdress that period of time in the now vacated DHO order dated 4-19-02. That period was not in dispute at the 4-19-02 DHO hearing.
 {¶ 34} "Temporary total compensation is ordered paid for the requested period from the 1-7-02 surgery to the 6-6-02 date of this hearing and to continue upon submission of proof. This finding is based on the reports of Dr. Moser. There is no contrary medical evidence.
 {¶ 35} "The employer argues that the injured worker abandoned her former position of employment when the plant went on strike on 6-17-01. They cite to McGraw to support their position that the injured worker is forever barred from receipt of temporary total compensation in this claim.
 {¶ 36} "The Staff Hearing Officer does not agree. McGraw did not involve loss of work due to strike. In addition, the parties agree that the injured worker was prevented by the allowed conditions from returning to her former position of employment before, during, and after the 6-17-01 strike date. She was on light duty when the strike began. The claimant inMcGraw had no restrictions when they left employment. For these reasons,McGraw is not applicable to the instant case.
 {¶ 37} "The strike lasted from 6-17-01 to 9-3-01 [sic].[1] The strike ended well before the period of time of 1-7-02 onward. The injured worker indicated that she has been willing, ready, and able to return to her light duty job since 9-3-01 [sic]. The employer admitted that they have no job (light duty or otherwise) available to the injured worker. They refused to take her back when the strike ended.
 {¶ 38} "An injured worker is deemed to `tacitly accept the consequences of one's voluntary acts.' State ex rel. Ashcraft v. Indus.Comm. (1987), 34 Ohio St.3d 42, 44. The Ohio Supreme Court has however, recognized `the great potential for abuse in allowing a simple allegation of misconduct to preclude temporary total disability compensation.'State ex rel. Smith v. Superior's Brand Meats, Inc. (1996),76 Ohio St.3d 408, 411. State ex rel. McKnabb v. Indus. Comm. (2001),89 Ohio St.3d 559. State ex rel. Baker v. Indus. Comm. (2000),89 Ohio St.3d 376, explained that the critical abandonment in evaluating temporary total disability eligibility was abandonment of the entire work force, not simply abandonment of the former position of employment.State ex rel. David's Cemetery v. Indus. Comm. (2001), 92 Ohio St.3d 498. For years, voluntary departure from employ-ment was the end of the story, and harsh results sometimes followed. Claimants who left the former position of employment for a better job forfeited temporary total disability eligibility forever after. In response, State ex rel. Bakerv. Indus. Comm. (2000), 89 Ohio St.3d 376, declared that voluntary departure to another job no longer barred temporary total disability compensation. It retained, however, the prohibition against temporary total disability compensation to claimants who voluntarily abandoned the entire labor market. Thus, the claimant who vacates the entire work force for non-injury reasons not related to the allowed condition and who later alleges an inability to return to the former position of employment cannot get temporary total disability compensation. This, of course, makes sense. One cannot credibly allege the loss of wages for which temporary total disability compensation is meant to compensate when the practical possibility of employment no longer exists. State ex rel.Staton v. Indus. Comm. (2201) [sic], 91 Ohio St.3d 407.
 {¶ 39} "However, in the present claim it is clear that the injured worker never intended to abandon the entire work force. She intended to return to her light duty job as soon as the strike was over. She tried to return to her job as soon as the strike was over. Nobody who goes on strike intends to permanently abandon the entire work force. Otherwise, they would not bother to go on strike. They would simply quit their job. Even then, that act would not by itself constitute abandonment of the entire work force.
 {¶ 40} "Baker II is the most complete explanation of the court created doctrine of abandonment of employment. Baker II was decided afterMcGraw. In its various descriptions of remaining examples of voluntary abandonment, `strike' is not listed as an example of abandonment. This is significant, because no Supreme Court case, past or present, has held that participation in a strike equals permanent abandonment of the former position of employment.
 {¶ 41} "In O.R.C. 4123.61, participation in a strike is specifically considered by the legislature to be a period of time beyond the control of the injured worker for purposes of the calculation of the average weekly wage.
 {¶ 42} "In short, the employer has not offered persuasive authority to support the conclusion that participating in a strike equals permanent abandonment of the former position of employment, thus precluding all future periods of temporary total.
 {¶ 43} "This is particularly true when one remembers that the strike ended five months prior to the approved 1-7-02 surgery; that the injured worker was on light duty restrictions before, during, and after the strike; and that the injured worker was refused by the employer in her efforts to return to her light duty job by the employer. To hold otherwise would be to conclude that anyone who strikes is forever precluded from future receipt of temporary total."
 {¶ 44} 20. The record contains claimant's retirement statement which she signed on May 31, 2002. The following typewritten statement is found on Angell Manufacturing Company's stationary: "Effective May 16th, 2002 I am officially retiring from Angell Manufacturing Company."
 {¶ 45} The document also contains the signature of relator's human resources manager Beth Ney. Ms. Ney indicates that she signed the document June 6, 2002.
 {¶ 46} Claimant's retirement statement of record fails to contain a commission filing time/date stamp. The parties have not been able to establish that the retirement letter was before the SHO who heard the appeal on June 6, 2002. (See supplemental stipulation of evidence and/or facts filed in this action on July 22, 2003.) Accordingly, the magistrate must infer that the retirement letter was not before the SHO who heard the appeal on June 6, 2002.
 {¶ 47} 21. On October 5, 2002, another SHO mailed an order refusing relator's administrative appeal from the June 6, 2002 SHO order.
 {¶ 48} 22. On December 16, 2002, relator, Angell Manufacturing Company, filed this mandamus action.
 Conclusions of Law {¶ 49} Two issues are presented: (1) whether the SHO's order of November 19, 2001 denying claimant's first request for TTD compensation bars the commission under the doctrine of res judicata from granting claimant's subsequent request for TTD compensation, and (2) whether the commission misapplied the law set forth in State ex rel. McCoy v.Dedicated Transport Inc., 97 Ohio St.3d 25, 2002-Ohio-5305, and related cases in awarding TTD compensation beginning January 7, 2002.
 {¶ 50} The magistrate finds: (1) the SHO's order of November 19, 2001 does not bar the commission from granting claimant's request for TTD compensation beginning January 7, 2002, under the doctrine of res judicata, and (2) the commission did not misapply the law set forth inMcCoy and related cases in granting TTD compensation.
 {¶ 51} Turning to the first issue, the doctrine of res judicata applies to administrative proceedings including proceedings before the commission. Jacobs v. Teledyne, Inc. (1988), 39 Ohio St.3d 168. However, because of the commission's continuing jurisdiction under R.C. 4123.52, the defense of res judicata has only limited application to compensation cases. State ex rel. B.O.C. Group, General Motors Corp. v. Indus. Comm.
(1991), 58 Ohio St.3d 199, 200. The B.O.C. Group court further noted:
 {¶ 52} "Res judicata operates `to preclude the relitigation of a point of law or fact that was at issue in a former action between the same parties and was passed upon by a court of competent jurisdiction.'Consumers' Counsel v. Pub. Util. Comm. (1985), 16 Ohio St.3d 9, 10 * * *. It applies `not only to defenses which were considered and determined but also to those defenses which could properly have been considered and determined.' State, ex rel. Moore, v. Indus. Comm. (1943),141 Ohio St. 241, * * * paragraph two of the syllabus; Rogers v.Whitehall (1986), 25 Ohio St.3d 67, 25 OBR 89 * * *.
 {¶ 53} In State ex rel. Kroger Co. v. Indus. Comm. (1998),80 Ohio St.3d 649, 651, the court, citing Consumers' Counsel v. Pub.Util. Comm. (1985), 16 Ohio St.3d 9, 10, emphasized that in order for res judicata to apply, the issue under consideration must have been "passed upon" or "conclusively decided" in an earlier proceeding. Res judicata does not apply if the issue at stake was not specifically decided in the prior proceeding.
 {¶ 54} Applying the aforementioned principles of law to the instant case, it is clear that res judicata cannot bar the commission's award of TTD compensation beginning January 7, 2002.
 {¶ 55} Analysis begins with a closer reading of the SHO's order of November 19, 2001. The order, citing State ex rel. McGraw v. Indus.Comm. (1990), 56 Ohio St.3d 137, and the testimony of claimant and Ms. Ney, denied TTD compensation for the period of Dr. Moser's certification, i.e., June 29, 2001 to August 7, 2001, on grounds that "claimant went off work for reasons unrelated to the industrial injury." The factual basis for this decision as indicated by the order is that "claimant went on strike and did not return prior to the effective date the strike ended."
 {¶ 56} In McGraw, the court held that the commission properly denied the claimant's request for TTD compensation because he "quit the job at which he was injured for reasons unrelated to his injury." InMcGraw, the claimant quit his job with Kenworth Trucking Company for reasons unrelated to his industrial injury and thereafter worked several other jobs before applying for TTD compensation. McGraw did not involve a striking claimant as does the instant case.
 {¶ 57} Even though the SHO's hearing of November 19, 2001 occurred months after the strike had ended when it would have been known that claimant had been replaced by permanent replacement workers, the issue before the SHO at the November 19, 2001 hearing was whether there were circumstances relevant to the claimed period of disability, i.e., June 29, 2001 to August 17, 2001, that might preclude the payment of TTD compensation. During the claimed period of disability, claimant was on strike. Because the strike ended after the claimed period of disability, any evidence regarding claimant's job status at the strike's end would have been irrelevant. In short, the SHO's decision of November 19, 2001 must be viewed as a denial of TTD compensation based upon the more limited factual basis that claimant was on strike during the claimed period of disability.
 {¶ 58} The SHO's order of November 19, 2001 did not adjudicate the scenario that was before the SHO at the June 6, 2002 hearing on the second request for TTD compensation.
 {¶ 59} It is important to note that the SHO's order of November 19, 2001, has not been challenged in this mandamus action. Accordingly, regardless of the legal sound-ness of the decision, it must be given whatever preclusive effect is due.
 {¶ 60} At the June 6, 2002 hearing, relator's defense to the new TTD claim was different than the one presented at the November 19, 2001 hearing. At the June 6, 2002 hearing, the claimed period of disability fell after the strike had ended. Consequently, relator argued at the June 6, 2002 hearing that claimant's loss of her job to the replacement workers was a consequence of her allegedly voluntary act of striking and that claimant must be held to have tacitly accepted that consequence by participating in the strike. The mere fact that claimant had engaged in a strike was no longer the focus of relator's defense to the second claim for TTD.
 {¶ 61} Given the above analysis, it is clear that the issue before the SHO at the June 6, 2002 hearing had not been "passed upon" or "conclusively decided" by the SHO's order of November 19, 2001. Thus, relator's invocation of the doctrine of res judicata is unpersuasive.
 {¶ 62} Turning to the second issue, the syllabus of McCoy,
supra, states:
 {¶ 63} "A claimant who voluntarily abandoned his or her former position of employ-ment or who was fired under circumstances that amount to a voluntary abandonment of the former position will be eligible to receive temporary total disability compensation pursuant to R.C. 4123.56
if he or she reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job."
 {¶ 64} Analyzing its prior decision in State ex rel. Baker v.Indus. Comm. (2000), 89 Ohio St.3d 376, the McCoy court emphasized thatBaker eliminates the "former position of employment" test as a viable foundation for the voluntary abandonment rule. McCoy, at ¶ 33. TheMcCoy court states:
 {¶ 65} "* * * The test itself does no more than fix the demands of the former position as the standard by which to gauge the claimant's medical impairment in disability terms; it has absolutely nothing to do with conditioning eligibility for TTD compensation on the actual availability of the former position of employment." Id.
 {¶ 66} The McCoy court further states:
 {¶ 67} "As Baker illustrates, the voluntary abandonment rule is potentially implicated whenever TTD compensation is requested by a claimant who is no longer employed in the position that he or she held when the injury occurred. But characterizing the claimant's departure from the former position of employment as `voluntary' does not automatically determine the claimant's eligibility for TTD compensation. Instead, voluntary departure from the former position can preclude eligibility for TTD compensation only so long as it operates to sever the causal connection between the claimant's industrial injury and the claimant's actual wage loss. Voluntary departure does not sever this causal connection when the claimant reenters the work force and, due to his or her original industrial injury, again becomes temporarily and totally disabled while working at the new job. * * *" Id. at ¶ 38.
 {¶ 68} Citing Transworld Airlines, Inc. v. Independent Federationof Flight Attendants (1989), 489 U.S. 426 at 436-437, relator posits that federal law protects an employee's right to choose not to strike. (Relator's brief at 6.)
 {¶ 69} Relator further posits that the employer's right to hire permanent replacements during a strike produces a foreseeable consequence that the striking employee's job may not be available when the strike is over. (Relator's brief at 6.)
 {¶ 70} Citing State ex rel. Ashcraft v. Indus. Comm. (1987),34 Ohio St.3d 42, 44, relator contends that, when an employee voluntarily chooses to engage in an economic strike, he or she must be deemed to "tacitly accept the consequences of his voluntary acts." According to relator, the striking employee's intent to return to employment after the strike is irrelevant. According to relator, a striking employee who finds herself without employment after the strike has ended due to the company's hiring of permanent replacements must be deemed to have voluntarily abandoned the workforce until such time as she reenters the workforce.
 {¶ 71} In the magistrate's view, the flaw in relator's argument is revealed in the following passage of State ex rel. Louisiana-PacificCorp. v. Indus. Comm. (1995), 72 Ohio St.3d 401, 403:
 {¶ 72} "In State ex rel. Ashcraft v. Indus. Comm. (1987),34 Ohio St.3d 42, * * * we discussed the temporary total disability compensation eligibility of an incarcerated claimant. We acknowledged that imprisonment would not fit the traditional definition of `voluntary' since individuals, as a general rule, do not actively seek or consent to incarceration. Looking more deeply, however, we found:
 {¶ 73} "`While the prisoner's incarceration would not normally be considered a "voluntary" act, one may be presumed to tacitly accept the consequences of his voluntary acts. When a person chooses to violate the law, he, by his own action, subjects himself to the punishment which the state has prescribed for that act.' Id., 34 Ohio St.3d at 44 * * *.
 {¶ 74} "Recognizing the parallels underlying incarceration and firing, we observed in State ex rel. Watts v. Schottenstein Stores Corp.
(1993), 68 Ohio St.3d 118, 121 * * *:
 {¶ 75} "`We agree that firing can constitute a voluntary abandonment of the former position of employment. Although not generally consented to, discharge, like incarceration, is often a consequence of behavior that the claimant willingly undertook, and may thus take on a voluntary character. * * *'"
 {¶ 76} In effect, by his argument, relator is suggesting that engaging in a lawful strike parallels incarceration for the commission of a crime or a firing for violation of an employer's written work rule. In the magistrate's view, no such parallel exists.
 {¶ 77} Moreover, as the commission itself points out in its order, R.C. 4123.61 provides that participation in a strike is considered to be a period of unemployment beyond the control of the injured worker for purposes of calculating the average weekly wage. R.C. 4123.61 is clear evidence that under Ohio law, there is no parallel between a lawful strike and incarceration for commission of a crime or being fired for violating a company's written work rule.
 {¶ 78} Accordingly, the magistrate concludes that relator has failed to show that the commission misapplied the law set forth inMcCoy, supra, and related cases in awarding the claimant TTD compensation beginning January 7, 2002.
 {¶ 79} The magistrate further notes that relator has attempted to raise an additional issue based upon the retirement letter that indicates that claimant retired from her employment at Angell Manufacturing Company effective May 16, 2002. According to relator, even if claimant did not voluntarily abandon her employment by her participation in the strike, she thereafter voluntarily abandoned her employment on May 16, 2002 when she retired. According to relator, the commission abused its discretion by awarding TTD compensation beyond May 16, 2002. (See relator's brief at 8; reply brief at 3.)
 {¶ 80} A voluntary abandonment of the former position of employment can bar TTD compensation. However, an injury-induced abandonment is never considered to be voluntary. State ex rel. Rockwell Internatl. v. Indus.Comm. (1988), 40 Ohio St.3d 44.
 {¶ 81} The claimant does not have a burden of disproving a voluntary abandonment of the former position of employment in order to show entitlement to TTD compensation. State ex rel. Superior's BrandMeats, Inc. v. Indus. Comm. (1997), 78 Ohio St.3d 409; State ex rel.Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78, 83. The burden of proof with respect to voluntary abandonment falls upon the employer or the administrator. Id.
 {¶ 82} The SHO's order of June 6, 2002, does not mention the retirement letter and does not address the retirement issue that relator attempts to raise in this mandamus action. In this action, relator has been unable to show that it submitted the retirement letter to the SHO who heard the appeal on June 6, 2002. Presumably, the SHO did not address the retirement issue because the issue was not presented to the SHO by relator who has the burden of proof on that issue.
 {¶ 83} This court cannot adjudicate the retirement issue in the first instance in this mandamus action. Relator's presumed failure to raise the issue administratively precludes relator from bringing the issue here. Quarto Mining, supra.
 {¶ 84} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
KENNETH W. MacKE, MAGISTRATE
[1] As previously noted, the Ney affidavit states that the strike ended on September 24, 2001.